Staples, J.,
delivered the opinion of the court.
The first ground of error assigned by the appellant is, that before a decree was rendered for the sale of the lands in controversy, the appellees should have been required to elect whether they would claim under or against the deed of trust executed by the appellant for the benefit of his creditors. The appellees acquired a lien by judgment, upon all the real estate of the appellant, before the execution of that deed. Ho attempt was made to defeat or interfere with this lien. On the contrary, the deed recognized the rights of the judgment creditors, and provided for enforcing them. It mattered but little, therefore, to the appellant, whether the property was sold under the judgment or the deed of trust.
It is true, the deed provides for a sale by the trustee only upon request made by a majority of the creditors. *503 But how were they to be ascertained ? The deed does not name them; nor does it enumerate the debts. As they were only known to the appellant, it would have been always difficult for the trustee to determine whether a majority had already united in demanding a sale. Inasmuch as the trustee could not sell without the concurrence of a majority, the only recourse of the creditors was a suit in equity, where the necessary parties might be convened, their rights and liabilities ascertained and adjusted, and the trust enforced under the supervision of court. That course was pursued in this case. It is true the creditors having judgments are only named in the bill, but the appellant has made no objection for the want of proper parties. He did not claim, in his answer or otherwise, in the court below, there were other creditors necessary to be brought before the court. If, indeed, there were others besides those named in the bill, they could have asserted their claims before the commissioner to whom the accounts were referred. The appellant was notified of the time and place of taking these accounts; but he failed to attend orto file any exception to the report before or after its confirmation. The creditors, before the court, made no objection to a sale under the deed. As they permitted the bill to be taken fo" confessed, it is to be presumed they desired the sale. If they did not constitute a majority of the creditors, it was for the appellant to show it. He alone, was in possession of information as to their name and number, and as he did not choose to furnish it, the court might well conclude a majority of them were represented.
The appellant claims, however, that his wife joined in the trust deed, upon condition of the creditors consent to the settlement in her favor. And he further insists, that they shall be required to ratify the settlement, or *504 abandon all claims under tbe deed. In tbe first place, tbe trust deed imposes no sucb terms. It is an absolute conveyance on its face, with an unconditional relinquishment of dower. In tbe second place, the decree c^oes not interfere with tbe properly embraced by tbe settlement. It directs only a sale of what is conveyed by tbe trust deed. Whether tbe creditors, including the appellee, have in fact claimed under tbat deed, and if so, whether sucb claim will preclude them from contesting tbe validity of the settlement, are questions not arising in this case, and in respect to which we express no opinion.
Another error assigned is,,in decreeing a sale before tbe difficulties in respect to tbe title were removed. It .is not pretended there is any cloud upon tbe title to tbe lots actually sold by the commissioners. Ho objection is made by tbe purchaser; and the price agreed to be paid for tbe lots abundantly shows, tbat not tbe slightest apprehension was felt by any one, in regard to tbe title. With respect to tbe other small tract, not yet sold, according to tbe appellants own showing, there is no real difficulty. The appellant became the purchaser under a decree of tbe County court of Matthews; has paid all tbe purchase money, but has received no deed. This tract contains only about six and a half acres, and probably is of but little value. Tbe legal title can at any time be. obtained, and there is no reason to suppose tbat any sacrifice will result from a sale of tbe property without it. Tbe whole subject is under tbe control of tbe Circuit court, which will take care not to confirm a sale at a grossly inadequate price.
Tbe next and principal ground of complaint is the error in confirming the sale made by tbe commissioners, because tbe sale did not conform to tbe terms of tbe decree under which tbe commissioners were acting; was not *505 only without the consent of the appellant, but directly against his most earnest remonstrance and protest; was a surprise upon the crowd in attendance, who were al- . t . ... " . . . lowed no opportunity to bid; was conducted secretly and confined to two bidders, one of whom was not advised that if he did not increase his bid the offer of the Other would be accepted; was thus a surprise to him, and prevented his giving more, and resulted in a sacrifice of the property. These are the objections; not one of them is well founded. It is not necessary to consider in detail the evidence bearing upon this point. It is sufficient to refer to a few of the more prominent facts.
• The decree provided that the commissioners, with the consent of the appellant, might sell the lots at private sale. The appellant expressly gave such consent. He wished the property to be sold for four thousand and five hundred dollars to his friend William A. Richardson, who was willing to purchase the lots at that price at private sale. The commissioners believing this was their fair value, were willing to make the sale on those terms. Tt was ascertained, however, very soon, that other parties were willing to give more, and the commissioners did not feel authorized to close the contract with Richardson, upon the terms proposed by him. After some negotiations, Marchant and Trader became the purchasers at the sum of five thousand dollars. It was not iintil after it was clearly ascertained that they were willing to purchase the property upon more liberal terms than those offered by Richardson, that the appellant insisted upon a public sale. Having given his consent that the property might be sold privately, he had no right to retract that consent, because his individual preferences were not consulted.
As to the charge that there were only two bidders present, and that the crowd assembled was denied an *506 nity of bidding for the property, it is notorious that Rich1ardson, Marchant and Trader, were the only persons present desiring to become purchasers. The complaint comes, however, with an ill-grace from the appellant, who insisted that the sale should be made to Richardson upon the very first terms proposed by him. R is no just cause for vacating a judicial sale, that only a few bidders were present. The competition may be as active and spirited among two or three as a dozen. The only enquiry for the court, is, whether the terms of the decree have been pursued, and the property sold at an adequate price. In this case the price agreed to be paid by Marchant and Trader, is fi / e hundred dollars in excess of the appellant’s own estimate.
It is said, however, that Richardson was willing to give more than five thousand dollars; but was refused an opportunity of doing so. His affidavit was taken and filed in the record. According to his version, he was willing to give forty-six hundred and fifty dollars; he was informed that other parties had offered five thousand dollars. He then remarked you can count me out of the ring; “ but put the place up to the highest bidder.” This was certainly a very distinct intimation that Mr. Richardson was unwilling to pay the price offered by Mar-chant and Trader. It was a little presumptuous in him, to say the least, under such circumstances, to demand a public sale. He declares, however, that he afterwards expressed his willingness to pay fifty-one hundred dollars. Why then did he not make the offer ? He was offered ample opportunity of doing so. A few days after the sale and before the contract with Marchant and Trader was fully consummated, he was told by one of the commissioners, that if he wished to contend for the property, he had better make a tender of the cash payment and the bonds; but he declined to make any *507 such tender. On another occasion, he was informed by the same commissioner, that time enough had elapsed to have the matter put into a definite form, and he must say whether he then contended for the property at five thousand and one hundred dollars. But the commissioner was unable to get a definite or satisfactory answer from him. It is apparent that this witness did not entertain any serious thought of buying the property upon the terms mentioned by the commissioner; and that he has been actuated throughout simply by a desire to gratify the wishes of the appellant. He does not now, m his affidavit, express a wish to buy the property upon any terms. The record does not show that any one else is anxious to become a purchaser. It is true that the appellant, in his petition to the Circuit court, proposed to execute bond with satisfactory security, that the offer of fifty-one hundred dollars, made on the day of sale, would be complied with “within five days after the rising of the court.” But it is obvious that this is no such substantial and material advance upon the price obtained by the commissioner as would justify the court in annulling the sale already made, and exposing the creditors to all the delays and hazards attending a resale. There is no doubt the property was sold at a very advantageous price; the sale was fairly conducted, and the terms of the decree fully complied with. The commissioners were the counsel of the parties; and them high character, personally and professionally, is an ample guaranty that no injustice was done, no fraud perpetrated or attempted. It would be a bad precedent, leading to most pernicious consequences, to vacate a sale made under such circumstances, because the owner may be able to find some one willing to advance a small sum *508 in excess of the commissioner’s sale. Such has not been the practice in Virginia.
■ For these reasons, I think the decree of the Circuit court should be affirmed.
Decree affirmed.